

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-17-1994

# Maschio v. Prestige Motors

Precedential or Non-Precedential:

Docket 94-5114

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Maschio v. Prestige Motors" (1994). *1994 Decisions*. Paper 156.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/156

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 94-5114


MAURO MASCHIO, Individually and as
President of Euro-Trade U.S.A., Ltd.;
EURO-TRADE U.S.A. LTD., (a New York Corporation),
Appellants

V.

PRESTIGE MOTORS, (a New Jersey Corporation)


ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 93-02167)


Submitted Under Third Circuit LAR 34.1(a)
August 12, 1994

Before:  HUTCHINSON and NYGAARD, <u>Circuit Judges</u>
and KATZ, <u>District Judge</u>*

(Opinion filed: October 17, 1994)

ANDREW J. KYREAKAKIS, ESQUIRE
Ambrosio, Kyreakakis & DiLorenzo
317 Belleville Avenue
Bloomfield, NJ 07003
Attorney for Appellants

THOMAS H. BRUINOOGE, ESQUIRE
GEORGE P. STASIUK, ESQUIRE
Bruinooge & Associates
85 Orient Way
Rutherford, NY 07070
Attorneys for Appellee

OPINION OF THE COURT

* Honorable Marvin Katz, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

NYGAARD, <u>Circuit Judge</u>.

Mauro Maschio appeals from a district court order granting summary judgment against him in an action he filed under the Automobile Dealer's Day in Court Act ("ADDCA"), 15 U.S.C. §§1221-25. Because we conclude that the defendant, Prestige Motors, Inc., is not a "manufacturer" within the meaning of the ADDCA, we will affirm.

I.

Mercedes-Benz of North America is an affiliate of Daimler-Benz, a German manufacturer of luxury automobiles. Defendant Prestige Motors, Inc. is an authorized dealer of Mercedes-Benz vehicles. Maschio is the principal owner of Euro-Trade, U.S.A., Ltd., a corporation licensed to sell automobiles.

Maschio and Euro-Trade regularly purchased scarce "high-end" automobiles from authorized dealers, including several Mercedes-Benz dealers. They would then resell them at a profit to customers desiring exotic vehicles not generally available in dealers' showrooms. During 1989 and 1990, Maschio and Euro-Trade attempted to purchase sixteen new vehicles from Prestige at retail, intending to resell them to the general public. There was no formal franchise agreement between Prestige and Euro-Trade. Instead, Prestige accepted orders on the same purchase order form it used when dealing with typical retail buyers. Prestige honored six of these contracts, but refused to deliver

the remaining ten vehicles, allegedly because of pressure exerted on it by Mercedes Benz of North America to refrain from selling automobiles to Maschio.

The district court granted summary judgment in favor of Prestige on the ADDCA claim, and after determining that complete diversity was lacking, dismissed the pendent state law causes of action. It held that the purchase orders used in the series of vehicle purchases did not constitute a franchise agreement within the meaning of the ADDCA, a necessary element of any such case.

## II.

The ADDCA is a remedial statute enacted to redress the economic imbalance and unequal bargaining power between large automobile manufacturers and local dealerships, protecting dealers from unfair termination and other retaliatory and coercive practices. See, e.g., Hanley v. Chrysler Motors Corp., 433 F.2d 708, 710-11 (10th Cir. 1970). It is, essentially, a supplement to the national antitrust laws, passed to counter-balance the economic leverage a manufacturer has over its ostensibly independent dealers, and its "control over [its] product in what amounts to quasi-integration to the retail level of distribution." H.R. Rep. No. 2850, 84th Cong., 2d Sess. 1, 3, reprinted in 1956 U.S.C.C.A.N 4596, 4596, 4598. There are four elements of an ADDCA cause of action: (1) the plaintiff must be an automobile dealer; (2) the defendant must be an "automobile manufacturer" engaged in commerce; (3) there must be a manufacturer-dealer relationship embodied in a written franchise

agreement; and (4) the plaintiff must have been injured by the defendant's failure to act in good faith.  15 U.S.C. § 1222; Sherman v. British Leyland Motors, Ltd., 601 F.2d 429, 441 (9th Cir. 1979).

Although the district court granted summary judgment in favor of Prestige, concluding that the sixteen purchase orders did not constitute a franchise agreement, we will assume, without deciding, that there was a valid franchise agreement.[1]  We will further assume, without deciding both, that Euro-Trade was a dealer within the meaning of the Act, and that Prestige terminated its "franchise" in other than good faith.  We will instead simply analyze the narrow question of whether Prestige was a manufacturer under the ADDCA, which we conclude determines the outcome of Maschio's appeal.

It is axiomatic that our inquiry begins with the language of the statute.  28 U.S.C. § 1221 defines the term "automobile manufacturer" as

> any person, partnership, corporation, association, or other form of business enterprise engaged in the manufacturing or assembling of passenger cars, trucks, or station wagons, including any person, partnership, or corporation which acts for and is under the control of such manufacturer or assembler in connection with the distribution of said automotive vehicles.

---

[1]"An appellate court may affirm a correct decision by a lower court on grounds different than those used by the lower court in reaching its decision."  Erie Telecommunications, Inc. v. City of Erie, 853 F.2d 1084, 1089 n.10 (3d Cir. 1988) (citing cases).

Prestige, of course, does not manufacture or assemble automobiles.  To be liable as a manufacturer, then, Prestige must be found to be both "acting for" and "under the control of" Mercedes-Benz.

Only three courts of appeals have had occasion to interpret § 1221(a).  The first considered "the 'control' requirement [to be] satisfied by showing corporate ownership and confluence of interest."  Colonial Ford, Inc. v. Ford Motor Co., 592 F.2d 1126, 1129 (10th Cir. 1979).  In the other two, the issue was resolved by reference to agency law.  Stansifer v. Chrysler Motors Corp., 487 F.2d 59, 64 (9th Cir. 1973); Volkswagen Interamericana, S.A. v. Rohlsen, 360 F.2d 437, 441 (1st Cir. 1966).

These cases usually arise, however, in the context of distributors or importers that stand between the dealer and the physical manufacturer.  In those circumstances, courts will be justifiably concerned that physical manufacturers might attempt to avoid the ADDCA's requirements by placing a strawman between themselves and their dealers, thus insulating themselves from the duty to act in good faith.  In Rohlsen, for example, the court stated that "the inclusion of certain distributors in section 1221(a) was designed only to prevent a manufacturer from circumventing its responsibilities under the act by transacting business with its dealers through alter egos."  360 F.2d at 437.

That context is not present here.  Mercedes-Benz of North America never agreed to accept Euro-Trade as a dealer.  Nor did Mercedes-Benz employ Prestige as an alter ego to impose

onerous terms on Euro-Trade without running afoul of the ADDCA; each operated independently.  At most, Mercedes-Benz pressured Prestige to cease doing business with Euro-Trade because it objected to Euro-Trade's business.  Such a desire not to deal does not implicate the same sort of anticompetitive concerns that apparently motivated the drafters of the ADDCA, nor is it indicative of any motive on the part of the physical manufacturer to oppress the local "dealer" -- in this case Euro-Trade -- with whom the manufacturer never intended to deal at all.

### III.

In sum, we decline to hold that Prestige became a "manufacturer" the moment it sold automobiles to Euro-Trade.  Nor do we conclude it was under a manufacturer's "control ... in connection with the distribution ..." of the automobiles. Instead, we hold that non-physical manufacturer status is limited to those situations in which the physical manufacturer has the potential to control an intermediary that acts for the manufacturer to avoid its duty to treat its dealers with good faith, thereby subverting the ADDCA.  For this reason, we will affirm the judgment of the district court.