

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-15-2005

# Messina v. EI DuPont de Nemours

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1978

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

## Recommended Citation

"Messina v. EI DuPont de Nemours" (2005). *2005 Decisions.* Paper 841.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/841

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-1978
_____

CHARLES MESSINA; BARBARA MESSINA, his wife

v.

E.I. DUPONT DE NEMOURS & COMPANY INCORPORATED

Charles Messina,

Appellant

_____

On Appeal From the United States District Court
For the District of Delaware
(D. Del. Civ. No. 02-cv-01700)
District Judge:  Honorable Kent Jordan
_____

Submitted Under Third Circuit LAR 34.1(a)
May 18, 2005

Before:  RENDELL, AMBRO and FUENTES, Circuit Judges

(Filed July 15, 2005)

_____

OPINION
_____

PER CURIAM

　　　Appellant Charles Messina, proceeding pro se, appeals an order of the United

States District Court for the District of Delaware granting summary judgment in favor of E.I. du Pont de Nemours and Company ("DuPont") in his reverse discrimination action. For the reasons that follow, we will affirm the District Court's order.

Messina, who is Caucasian, worked at DuPont for twenty-three years. He is an electrician. In October 2000, Messina was trying to re-position a wire in a switch box in order to close its cover when an electric arc flash occurred. He suffered burns requiring hospitalization. DuPont Facilities Services ("DFS"), the unit in which Messina worked, investigated the incident and found that Messina had violated its safety rules by failing to shutdown and lockout the power in the area, wear protective gear, and prepare a job plan.

Audrey Gidney, a supervisor who is African-American, concluded that Messina should be fired. Messina's direct supervisor, who is Caucasian, agreed. Gidney did not have authority to fire Messina, and she sought approval from her supervisor, a Caucasian, who directed her to present the recommendation to the executive staff for approval, or "non-objection." No one objected, and Messina was fired.

Messina and his wife, through counsel, filed a complaint in the District Court alleging that DuPont violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, by treating Messina differently than similarly situated employees of a different race. Following discovery, DuPont moved for summary judgment. In granting the motion, the District Court held that Messina had not established a prima facie

2

case of reverse discrimination. This appeal followed.[1]

We have jurisdiction pursuant to 28 U.S.C. § 1291. Our standard of review is *de novo*. Jones v. Sch. Dist. of Phila., 198 F.3d 403, 409 (3d Cir. 1999). In his brief, Messina argues that the District Court erred in holding that he did not establish a prima facie case of discrimination, and that he had shown that DuPont treated him differently than similarly situated African-American employees for disciplinary purposes.

As recognized by the District Court, the McDonnell Douglas[2] burden-shifting analysis applies to claims of reverse discrimination. Iadimarco v. Runyon, 190 F.3d 151, 158 (3d Cir. 1999). Under this analysis, once the plaintiff establishes a prima facie case of discrimination, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for its adverse action. See id. at 157. If the employer offers some evidence of a legitimate, nondiscriminatory reason, a plaintiff must then show that the stated reason was in fact pretext. Id. at 157-58.

To establish a prima facie case of reverse discrimination, the plaintiff must present sufficient evidence to allow a reasonable fact finder to conclude (given the totality of the circumstances) that the defendant treated him less favorably than others because of his

_____

[1]The District Court also granted summary judgment for DuPont on the Messinas' claim that DuPont violated Delaware state law by firing Messina in retaliation for seeking worker's compensation benefits, and their claim for loss of consortium. In an earlier order, we summarily affirmed these rulings because the Messinas had withdrawn these claims.

[2]McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

race. Id. at 163.  As we have stated, "[t]he evidentiary burden at this stage is rather modest:  it is to demonstrate to the court that plaintiff's factual scenario is compatible with discriminatory intent – i.e., that discrimination could be a reason for the employer's action."  Marzano v. Computer Science Corp., 91 F.3d 497, 508 (3d Cir. 1996).  This initial burden is not intended to be onerous.  Id.

Applying this standard, we conclude that Messina established a prima facie case of discrimination.  He relies on two incidents.  The first involved an African-American employee named Arthur Tate.  In December 1999, DFS employees worked on a pipe without properly locking out the valves controlling the flow of steam to the pipe.  As a result of this safety violation, four Caucasian DFS employees were demoted and placed on probation.  The company determined that Tate assisted on the project but did not actively work on the pipe.  Tate received an "informal contact," or a verbal reprimand, for failing to challenge the other workers.  After this incident, DFS held training sessions on the safety rules, and adopted its "Inviolable Safety Rules," which include performing lockouts when required.

The second incident involved an African-American employee named Charles Mason.  In 2001, Mason worked on a piece of sheet metal duct work that was removed from an oven belonging to Central Research & Development.  DFS did not require a lockout for this work.  Mason left his work area, someone used the oven, and smoke filled the area.  Mason was given a "formal contact," the second step in DuPont's discipline

4

policy, because he should have notified Central Research & Development that he was leaving the area, so that it could perform a lockout in accordance with Central Research & Development's procedures.

We recognize that Tate's infraction occurred before the adoption of the Inviolable Safety Rules, under which Messina was fired, and that Mason did not violate the Inviolable Safety Rules. However, given the totality of the circumstances, including Messina's long-term employment with DFS and the fact that the Tate and Mason incidents also involved failures to perform lockouts, we find sufficient evidence at the prima facie stage for a reasonable fact finder to conclude that DFS treated Messina less favorably than others because of his race.

Although we disagree with the District Court that Messina failed to establish a prima facie case, we conclude that DuPont is entitled to summary judgment because it articulated a legitimate, nondiscriminatory reason for firing Messina, and Messina cannot show that the reason is a pretext for discrimination. DuPont produced evidence that it fired Messina because he violated the safety rules. The pretext analysis then focuses on whether there is sufficient evidence from which a jury could conclude that the purported reasons for the employer's actions were in actuality a pretext for intentional race discrimination. Jones, 198 F.3d at 412. Here, the record does not establish that a fact finder would reasonably either disbelieve DuPont's reason for firing Messina; or believe that an invidious discriminatory reason was more likely than not a motivating or

5

determinative cause of DuPont's action.  See id. at 413.  To the contrary, the record reflects that Messina's act was the most serious safety violation his direct supervisor had seen, and that DFS advised employees that a violation of the Inviolable Safety Rules would be a terminable offense.[3]

Accordingly, we will affirm the order of the District Court granting summary judgment in favor of DuPont on other grounds.  See Maschio v. Prestige Motors, 37 F.3d 908, 910 n. 1 (3d Cir. 1994) (stating that an appellate court may affirm on grounds different than those used by the lower court in reaching its decision).

---

[3]Messina relies on an email message to show discriminatory intent.  About a year before Messina's safety violation, Audrey Gidney, in her role as communications director of the People of Color Organization, sent an email to minority members at DFS about safety issues when shopping.  Messina sent Gidney an email suggesting that she send emails like this to everyone, and that by not doing so, it seemed as though she wanted to be separate from others, and "it just d[idn't] look good to others."  App. at 95.  Gidney testified that she decided to send such information to other managers and leave its distribution up to them.  While this evidence shows how Messina felt about Gidney's action, it does not suggest a racial bias on Gidney's part.  Messina also argues that Gidney did not recommend that the company fire Tate or Mason.  Gidney, however, was not involved in Tate's incident, and the record does not establish that she was involved in Mason's incident.