

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-8-2000

# Northview Motor Inc v. Chrysler Motors Corp

Precedential or Non-Precedential:

Docket 99-3873

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Northview Motor Inc v. Chrysler Motors Corp" (2000). *2000 Decisions.* Paper 192.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/192

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 8, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-3873

NORTHVIEW MOTORS, INC.,

     Appellant

v.

CHRYSLER MOTORS CORPORATION

JOSEPH P. NIGRO,

     Trustee

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ. No. 93-1722)
District Judge: Hon. William L. Standish

Argued August 8, 2000

BEFORE: BARRY, WEIS and GREENBERG, Circuit Jud ges

(Filed: September 8, 2000)

       Christopher M. DeVito (argued)
       Morganstern, McAdams & Devito
       1406 W. Sixth Street, Suite 400
       Cleveland, Ohio 44113

        Attorneys for Appellant

          Mark F. Kennedy
          Christopher J. Meyer (argued)
          Wheeler, Trigg & Kennedy
          1801 California Street, Suite 3600
          Denver, Colorado 80202

           Attorneys for Appellee

OPINION OF THE COURT

GREENBERG, Circuit Judge.

I. INTRODUCTION

This matter comes on before this court on appeal from a
final order of the district court entered September 28, 1999,
granting judgment as a matter of law in favor of defendant
Chrysler Motors pursuant to Fed. R. Civ. P. 50(a) after the
close of all the evidence on plaintiff Northview Motors's
breach of contract and Automobile Dealers Day in Court
Act ("ADDCA"), 15 U.S.C. SS 1221-25, claims. Northview
also appeals from (1) an order entered March 7, 1995, to
the extent that it granted Chrysler summary judgment on
Northview's Pennsylvania Board of Vehicles Act ("BVA"), Pa.
Stat. Ann. tit. 63, SS 818.1 et seq., claims on the ground
that they were barred by the statute of limitations and (2)
an order entered February 9, 1996, to the extent it granted
Chrysler summary judgment on Northview's claim for
violation of a provision of Pennsylvania's Uniform
Commercial Code ("UCC") which obligates contracting
parties to act in good faith. See 13 Pa. Cons. Stat. Ann.
S 1203. We will affirm the orders entered by the district
court, although we do so with respect to the March 7, 1995
and February 9, 1996 orders for reasons which differ from
those the district court set forth.

A. Factual Background

At the times material to this action, Northview, a
Delaware corporation with its principal place of business in
Pittsburgh, Pennsylvania, was an automobile dealership
franchise selling and servicing Jeep and Eagle vehicles.

2

Frank Cuda, Northview's sole shareholder, oversaw the dealership's operations. Chrysler, a Delaware corporation with its principal place of business in Detroit, Michigan, at the times material to this opinion manufactured Jeep and Eagle vehicles as successor to American Motors Corporation.

Cuda had been involved in the automobile industry since he was a child. See app. at 258. He began in the industry by working at his father's dealership between 1954 and 1968. See id. at 260. In 1968, Northview began selling new cars as an American Motors dealer in the North Hills section of Pittsburgh. See id. at 261. Cuda testified that throughout the 1970s and 1980s, Northview was a successful dealership consistently ranking as one of the top one hundred American Motors dealerships in the nation. See id. at 287. As an American Motors dealership, Northview marketed both the Jeep and Eagle lines of vehicles.

This case arose directly from events commencing on or about December 11, 1987, when Northview entered into an American Motors Sales Corporation Eagle Sales and Service Agreement ("Eagle SSA") and an American Motors Sales Corporation Jeep Sales and Service Agreement ("Jeep SSA") (collectively, the "SSAs"). Chrysler subsequently acquired American Motors Sales Corporation's Jeep and Eagle lines and became its successor in interest to the Jeep and Eagle SSAs in contractual privity with Northview.[1]

Inasmuch as the suit Northview filed against Chrysler evolved out of the two SSAs to which Chrysler became a party after it purchased American Motors's Jeep and Eagle product lines, we set forth significant parallel portions of the agreements. Section 11(a) of the SSAs obligated Northview to use its best efforts to sell aggressively and effectively each and every model of the Jeep and Eagle product lines. See, e.g., exhs. at 152. Section 12 required that Northview be a member in good standing of the Dealer

_____

1. There was testimony that Chrysler acquired American Motors in the summer of 1987 but even if this is so our result would be the same as that we reach.

3

Advertising Association, an association which advertised lines of vehicles sold by its dealer members. See id. at 156.

Section 28 of the SSAs governed their termination. See exhs. at 161. It provided, in relevant part:

>     (C) Notwithstanding the provisions above, this Agreement will terminate automatically without notice from either party on:
>
>     . . . (vi) the failure of DEALER to fully conduct its Dealership Operations for seven (7) consecutive business days . . .

Id. at 162 (emphasis added).

Northview asserts that Chrysler had problems with the allocation of vehicles and parts availability immediately following the absorption of the Jeep and Eagle dealers into the Chrysler system. Thus, Northview presented evidence that it continuously was unable to obtain desired vehicles from Chrysler to sell to the public and was unable to fill a fleet order for Alamo Rent-A-Car. See id. at 305.

In addition to the supply problems Northview experienced under Chrysler, it asserts that it had problems because it was unable to obtain answers from local Chrysler management concerning questions critical to the efficient operation of its dealership. For example, Northview asserts that Chrysler never explained its system for new vehicle allocation properly, despite Northview's numerous attempts to obtain the information. Further, Northview alleges that Chrysler never gave it a sufficient explanation of its warranty processing system which is known as Expense Per Unit Repaired or EPUR. Northview argues that the lack of an adequate explanation caused its service department to be audited and placed in a restrictive warranty approval category.

Clearly there was animosity between Northview personnel and Cuda on the one hand and local Chrysler management, or zone employees, on the other. Northview asserts that the only response Chrysler gave it to its inquiries about Chrysler's processes was "That's the system." Chrysler employees, however, documented instances in which Cuda was uncooperative and verbally abusive towards them.

4

Northview asserts that its supply problems and the confusion at the dealership concerning Chrysler's operating procedures, combined with the personal animosity between Northview and Cuda and Chrysler zone personnel, caused it increasing financial problems. Northview claims that because it could not obtain vehicles it could sell, and instead was left with unwanted or slow moving vehicles, it was forced to sell vehicles out of trust.2  When Mellon Bank, Northview's floor plan lender, discovered that Northview was selling out of trust, it revoked Northview'sfloor plan agreement and required Northview to enter into an agreement for repayment of its loan. When Northview was unable to make the required payments, Mellon Bank closed the dealership on July 10, 1991.

Upon learning that Northview was closed for business, Chrysler, on July 19, 1991, sent it notice that it was canceling the Jeep and Eagle SSAs. After Northview failed in attempts to sell its dealership, it filed for protection under Chapter 11 of the Bankruptcy Code, but the bankruptcy court would not allow for a restructuring of the failing dealership. Chrysler sent its final notice of termination to Northview on December 12, 1991.

Although Northview argues that its financial troubles were attributable directly to the actions of Chrysler and its employees, plainly other factors contributed to its problems. Notably, in May 1984, the Attorney General of Pennsylvania filed suit against Northview alleging that it committed 109 separate violations of Pennsylvania's consumer protection laws, see app. at 605, an action that led to negative press coverage of Northview. See id. at 609-10. During the trial concerning the consumer fraud violations in May 1988, the Pittsburgh Press quoted Cuda as stating that the lawsuit had cost Northview a lot of money and that Northview's

_____

2. A dealer will sell out of trust when it has afloor plan agreement with a financial institution for it to lend money to the dealer to fund the purchase of new vehicles. Under the floor plan, as the vehicles are sold, the dealer is responsible for repayments of the loan. The dealer sells out of trust when it sells vehicles without making payments to the financial institution as required by the agreement, but rather keeps the funds within the dealership for other purposes or otherwise utilizes the funds.

sales had "plunged from . . . one hundred ten cars a month to twenty or thirty cars." Id. at 603.

B. Procedural History

Northview and Cuda, individually, filed the complaint in this action in the district court on October 20, 1993, alleging claims predicated on Chrysler's alleged breach of contract and violation of state and federal statutory law, including claims under the BVA, the UCC, and the ADDCA. In particular, count one alleged that Chrysler breached the Jeep and Eagle SSAs as well as various statutory and contractual duties of good faith by conduct which demonstrated its:

> (a) failure to act in good faith;
>
> (b) failure to provide financial assistance as promised;
>
> (c) failure to provide products and vehicles;
>
> (d) failure to treat dealership [(Northview)] in equitable manner; and
>
> (e) discriminatory practices against Plaintiffs.

Northview alleged that as a result of this conduct it was forced to cease doing business and that the Jeep and Eagle SSAs were terminated on July 10, 1991.

In count two, Northview and Cuda alleged that Chrysler, through its acts and omissions, violated the BVA. Specifically, the count alleged that Chrysler violated the following provisions of the Act by coercing Northview with respect to:

> (a) S 818.9(a)(1) – ordering or accepting delivery of new vehicles which were not voluntarily ordered;
>
> (b) S 818.9(a)(3) – participating monetarily in advertising campaign at expenses of new vehicle dealer; and
>
> (c) S 818.9(a)(4) – threatening to terminate or cancel franchise unless prejudicial act performed by dealer;

The count also charged Chrysler with:

> (d) S 818.9(b)(1) – failure to deliver new vehicles;

6

(e) S 818.9(b)(2) - discriminating among its new vehicle dealers; and

(f) S 818.9(c) - unfairly and without just provocation canceling the franchise of the new vehicle dealer. 3

In count three, Northview and Cuda alleged that Chrysler's intentional and/or negligent acts constituted tortious interference with business relations. Count four alleged Chrysler breached its duty of good faith in the UCC. Count five alleged that Chrysler violated the ADDCA.

In conclusion, Northview and Cuda alleged that "[a]s a result of the numerous breaches of good faith and wrongful and intentional acts by [Chrysler], Plaintiffs have suffered substantial damages including, but not limited to, the loss of Frank Cuda's life savings and investment, loss of profits including future profits, loss of franchise auto dealership and land, loss of salary and benefits." Thus, Northview and Cuda sought compensatory and punitive damages as well as attorneys' fees and costs.

On August 16, 1994, Chrysler filed a motion seeking a summary judgment dismissing all of Cuda's claims. The district court, in an opinion and order entered on March 7, 1995, granted that motion in an order from which Cuda does not appeal. As we shall explain, the court also partially granted Chrysler summary judgment against Northview at that time, even though Chrysler did not then move for summary judgment against Northview. Northview does appeal from that order.

On August 7, 1995, Chrysler filed a motion for summary judgment against Northview. Following a hearing on the motion held on December 6, 1995, the district court issued an order, entered on February 9, 1996, partially granting and partially denying the motion. On March 11, 1996, Chrysler filed a motion for reconsideration, which the district court denied by order entered March 14, 1996.

The court held a pretrial conference on May 6, 1996. Following the conference, the parties apparently settled the
_____

3. These provisions were renumbered in 1996 as Pa. Stat. Ann. tit. 63, SS 818.12 and 818.13.

7

case on May 16, 1996, and thus the district court closed the case. The settlement, however, was not consummated, leading Chrysler on February 18, 1998, to file a motion to enforce the settlement agreement. On June 10, 1998, the district court entered an order granting the motion to enforce the settlement.

On July 7, 1998, Northview and Cuda filed an appeal from the order granting the motion to enforce the settlement. On June 18, 1999, for reasons implicating Northview's bankruptcy which we need not explain, we reversed the order of the district court enforcing the settlement and remanded the matter to the district court for further proceedings. See Northview Motors, Inc. v. Chrysler Motors Corp., 186 F.3d 346 (3d Cir. 1999).

There was a jury trial on the remand starting on September 14, 1999. At the close of Northview's case, Chrysler unsuccessfully moved for a judgment as a matter of law. Thereafter, Chrysler presented its case and the trial concluded on September 28, 1999. Chrysler then renewed its motion for a judgment as a matter of law and on September 28, 1999, the district court granted the motion, setting forth its reasons on the record. On October 26, 1999, Northview timely filed a notice of appeal from the September 28, 1999 order. Inasmuch as Northview appeals from the March 7, 1995, February 6, 1996 and September 28, 1999 orders, we describe them in some detail.

a. The March 7, 1995 Order

In its memorandum opinion and order entered March 7, 1995, the district court addressed Chrysler's motion for summary judgment with respect to Cuda's claims. The court determined that Cuda lacked standing to assert claims pursuant to the ADDCA, and accordingly entered judgment in Chrysler's favor on those claims. The district court also concluded that Cuda had failed to establish essential elements of his breach of contract and UCC claims in that he did not allege that he was a party to the agreements involved or that Chrysler owed him a duty of good faith under the UCC. Finally, with respect to Cuda, the district court determined that the statute of limitations

8

barred his allegations of tortious interference with contract and violation of the BVA.

On its own motion, the court granted Chrysler summary judgment on statute of limitations grounds on Northview's claims of tortious interference and violations of the BVA, as the factual bases for these claims were the same as the bases for Cuda's claims. On this appeal, Northview challenges the district court's dismissal of its BVA claims as barred by the statute of limitations but, as we have indicated, Cuda does not appeal.

b. The February 9, 1996 Order

In its memorandum opinion and order entered on February 9, 1999, the district court addressed Chrysler's motion for summary judgment as to Northview's claims for violations of the ADDCA, breach of contract and breach of the duty to act in good faith as specified in the UCC, 13 Pa. Cons. Stat. Ann. SS 1011 et seq. The court partially granted and partially denied the motion. The court found that Northview asserted two distinct ADDCA causes of action, one based upon both Chrysler's failure to act in good faith in performing and complying with the terms of the SSAs and the other for Chrysler's lack of good faith in terminating Northview's franchise.

The court determined that substantial questions of fact remained to be resolved with respect to Northview's ADDCA claim relating to the termination of its franchises. Accordingly, it denied the motion for summary judgment as to the ADDCA lack of good faith termination claim.

Chrysler, however, also moved for summary judgment as to Northview's claim that it failed to act in good faith in performing and complying with the provisions of the franchise agreements. Specifically, Chrysler asserted that the bad faith acts of which Northview complained were insufficient to state a claim or, in the alternative, were barred by the statute of limitations. The court found that the following alleged bad faith acts were insufficient, as a matter of law, to state a claim under the ADDCA:

> (1) the alleged failure of Chrysler to provide parts and vehicles to Northview;

(2) the alleged failure of Chrysler to provide financial assistance to Northview;

(3) the alleged failure of Chrysler to provide Northview with copies of the District Service Manager's Reports;

(4) the alleged failure of Chrysler to provide adequate training for Northview personnel concerning Chrysler's procedures, programs, and computer systems;

(5) the performance of a warranty audit by Chrysler on the Northview dealership.

App. at 25.

The district court reasoned that Northview had failed to present sufficient evidence of express or implied coercion, as required under the ADDCA, to allow it to proceed with the good faith and performance aspect of its ADDCA cause of action. In the absence of evidence that it coerced or intimated Northview, the district court determined that Chrysler was entitled to judgment as a matter of law on this claim.

The district court found that only two of Northview's allegations, other than those relating to termination, could state a claim for relief under the ADDCA: (1) that Chrysler threatened to terminate its franchise agreements with Northview unless Northview agreed to join an advertising campaign; and (2) that Chrysler forced Northview to accept new vehicles that it did not want or need. See id. at 26. This conduct, however, occurred in 1988 and 1987, respectively, and, as a result, the court found that any claims based upon these allegations were barred by the statute of limitations. See id. at 26-28. The court also noted that Northview had agreed expressly in the SSAs to "at all times be a member in good standing of the . . . Dealer Advertising Association." Id. at 28 n.5. The district court therefore concluded that Northview's complaint with respect to being forced to join an advertising campaign failed inasmuch as the use of coercion to enforce a valid contractual provision is not wrongful under the ADDCA. See id. (citing Empire Volkswagen, Inc. v. World-Wide Volkswagen Corp., 814 F.2d 90, 97 (2d Cir. 1987)).

10

When it addressed Northview's claim for breach of the covenant of good faith and fair dealing in the UCC, the district court found that Pennsylvania law did not provide for an independent cause of action for breach of the covenant of good faith. See app. at 33. The district court based this determination on the comment to 13 Pa. Cons. Stat. Ann. S 1203, Pennsylvania's version of the UCC provision codifying the obligation to act in good faith. See id. The comment provides:

> This section does not support an independent cause of action for failure to perform or enforce in good faith. Rather, this section means that a failure to perform or enforce, in good faith, a specific duty or obligation under the contract, constitutes a breach of that contract or makes unavailable, under the particular circumstances, a remedial right or power. This distinction makes it clear that the doctrine of good faith merely directs a court towards interpreting contracts within the commercial context in which they are created, performed, and enforced, and does not create a separate duty of fairness and reasonableness which can be independently breached.

13 Pa. Cons. Stat. Ann. S 1203, UCC Comment. Accordingly, the court entered judgment in favor of Chrysler on Northview's UCC claim.

c. Claims that Proceeded to Trial

Although Northview has focused its briefs on the Rule 50(a) order on the ADDCA claim, at trial it advanced both its breach of contract claim and its ADDCA claim which, in light of the district court's earlier rulings, was limited to a cause of action for "bad faith" termination of Northview's franchises. Accordingly, the court did not admit evidence of Northview's being forced to take unwanted cars, the warranty audits, and the failure of Chrysler to provide needed vehicles as substantive evidence to support a damages recovery by Northview for these alleged wrongdoings. Rather, the court admitted this evidence under Fed. R. Evid. 404(b) solely for the purpose of establishing motive or intent, i.e., that Chrysler terminated

11

the SSAs in July 1991 to force Northview out of business in furtherance of its business plan to terminate stand alone Jeep and Eagle dealerships and replace them with dealerships selling other Chrysler lines.

d. The September 28, 1999 Order and Record Statements

As we have indicated, after the close of all of the evidence, the district court issued an order, dated September 28, 1999, granting judgment as a matter of law in favor of Chrysler on all remaining claims pursuant to Fed. R. Civ. P. 50(a), i.e., those under the ADDCA for termination of Northview's franchise and for breach of contract. The court set forth its reasons for granting judgment in favor of Chrysler on the record. See app. at 1279-80.

After hearing argument from the parties, the district court explained as follows:

> These points that were given to me, there are -- here's what they say, that they say, what was it, coercive and discriminatory practices beginning in 1988; failed to allocate and deliver the appropriate quantity of cars; forced Northview to accept unwanted vehicles; performed a retaliatory warranty audit.
>
> Now, clearly the audit was performed. There's no contract claim or Dealer Day in Court claim for-- that it's barred by the statute of limitations. Furthermore, the audit was authorized under the contract. Improperly placed the dealership on prior approval for warranty and repair work. Well, that was done in 19-- early in `88, before the audit occurred. That's also barred.
>
> And failed to act in good faith in complying with the contract, with the ulterior purpose of reducing its dealer body; there is no evidence of that at all.
>
> * * * *
>
> Now, there just -- there isn't any evidence of these things being a violation of the contract or -- to the extent that it's claimed a violation of the Dealer Day in

12

Court Act, the only specific matters about which evidence was offered occurred prior to the bar of the -- prior to the time bar and you can't argue it.

This is what's causing me the trouble in this case I am having. You know, I'm considering the Rule 50 motion; I'm left not knowing what it is I can charge this jury.

* * * *

I mean what the theory really is is not that they-- I don't think it can be really the termination, because the termination was automatic according to the contract. It's an automatic termination if it's-- if you don't do business for seven consecutive days. It's not a matter of we have the option to do it or not to do it; it says in the agreement that it's an automatic termination.

So what the complaint really is is that all these practices were motivated in order to get Northview out of business, but the way they did it was to make sure he went into bankruptcy or he became insolvent and couldn't operate anymore. That's apparently the theory. And that because they became insolvent, they then were -- they were taken -- their assets were taken over by Mellon Bank, they couldn't possibly have done business anymore.

* * * *

All of this, like the audit for instance, is barred by the statute of limitations. You can't claim that as a violation of the Dealer Day in Court Act. You just can't. Nor can you claim it is a violation of the contract. In fact, the contract authorizes the audit.

This is the trouble I'm having with this case, and I'll tell you -- I honestly -- I don't know how I can construct a charge. I don't think I understand what the theories are well enough except -- and I think I'm-- I don't like to do it, but I think I have to grant the Rule 50 motion. I just don't think there is enough here to get to a jury with, no matter how you try to put it together.

13

        * * * *

        So I'm going to grant the Rule 50 motion. Maybe the
        Court of Appeals will tell me what to do.

App. at 1272-76.

The district court then clarified its opinion by stating:

        I just don't think there's enough evidence that has
        been offered and produced in this case to submit to a
        jury on a Dealer Day in Court or breach of contract
        claim. That's what I think. And I'm -- when I'm trying
        to figure out what to say to tell the jury to instruct
        them, I don't know what to instruct them. I don't know
        what breach of contract occurred that isn't barred by
        the statute of limitations. I don't know what Dealer Day
        in Court Act violation that occurred that also isn't
        barred by the statute of limitations. There just isn't
        any.

Id. at 1277. Northview then appealed.

II. JURISDICTION

This case, although pleaded in conjunction with
numerous state contract and statutory law claims, in part
arose under the ADDCA, 15 U.S.C. SS 1221-25.
Accordingly, the district court had federal question
jurisdiction pursuant to 28 U.S.C. S 1331. Inasmuch as the
parties were not of diverse citizenship, the district court
exercised jurisdiction over the state law claims pursuant to
28 U.S.C. S 1367 (supplemental jurisdiction). As Northview
appeals from a final order of the district court, appellate
jurisdiction is appropriate under 28 U.S.C. S 1291.[4]

_____

4. In its notice of appeal, Northview states that it is appealing only
from
the order entered September 28, 1999. Northview's opening brief,
however, additionally raises challenges to the orders entered March 7,
1995 and February 9, 1996. We have jurisdiction to hear the latter
arguments as notices of appeal are construed to include earlier orders
that were "non-final" at the time of issuance if there is a connection
between the order specified in the notice of appeal and the earlier
orders.
See Pacitti v. Macy's, 193 F.3d 766, 776-77 (3d Cir. 1999).

14

III. DISCUSSION

A. Points Raised

On this appeal Northview raises the following points:

> I. The district court erred in applying the incorr ect statute of limitations to Northview's Pennsylvania Board of Vehicles Act;

> II. The district court erred in granting summary judgment for Chrysler on Northview's independent good faith claim by disregarding Pennsylvania precedent regarding the existence of an independent cause of action based on the breach of an implied duty of good faith present in all franchise agreements;

> III. The district court committed reversible error by granting Chrysler's motion for directed verdict when the evidence presented allows a reasonable jury to infer that Chrysler intended to get rid of their stand alone Jeep and Eagle dealers and engaged in a course of conduct to force Northview's termination of its franchise agreement.

B. Standard of Review

As we noted, to the extent appealed, the March 7, 1995 and February 9, 1996 orders of the district court granted summary judgment in favor of Chrysler. Our review of the order of the district court on a motion for summary judgment is plenary. See Seibert v. Nusbaum, Stein, Goldstein, Bronstein & Compeau, 167 F.3d 166, 170 (3d Cir. 1999); Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co., 998 F.2d 1224, 1230 (3d Cir.1993). We will affirm only if we conclude that the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that the party who obtained summary judgment on a point was entitled to that judgment as a matter of law and that there was no genuine dispute of material fact standing in his or her way. See Fed. R. Civ. P. 56(c).

After trial on Northview's breach of contract and ADDCA claims, the district court granted Chrysler's Rule 50(a) motion for judgment as a matter of law. We utilize a

plenary standard to review a grant or denial of a judgment as a matter of law. See Shade v. Great Lakes Dredge & Dock Co., 154 F.3d 143, 149 (3d Cir. 1998); Salas v. Wang, 846 F.2d 897, 902 (3d Cir. 1988). "[A] directed verdict is mandated where the facts and the law will reasonably support only one conclusion." McDermott Int'l, Inc. v. Wilander, 498 U.S. 337, 356, 111 S.Ct. 807, 818 (1991). A court should grant such a motion only "if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir.1993); see also Shade, 154 F.3d at 149.

C. The Appropriate Statute of Limitations for Board of
        Vehicles Act Claims

The Pennsylvania Board of Vehicles Act ("BVA") provided at the times applicable here for a cause of action on the following terms:

> (a) Action for damages.--Notwithstanding the terms, provisions or conditions of any agreement or franchise or other terms or provisions of any novation, waiver or other written instrument, any person who is or may be injured by a violation of a provision of this act or any party to a franchise who is so injured in his business or property by a violation of a provision of this act relating to that franchise, or any person so injured because he refuses to accede to a proposal for an arrangement which, if consummated, would be in violation of this act, may bring an action for damages and equitable relief, including injunctive relief, in any court of competent jurisdiction.

> (b) Punitive Damages.--If any person engages in continued multiple violations of a provision or provisions of this act, the court may award punitive damages in addition to any other damages under this act.

Pa. Stat. Ann. tit. 63, S 818.20 (renumbered in 1996 as Pa. Stat. Ann. tit. 63, S 818.29).

16

In relevant part, the BVA prohibited the following conduct:

(a) Unlawful acts by manufacturers.--It shall be a violation for any manufacturer, factory branch, distributor, field representative, officer, agent or any representative whatsoever of such manufacturer, factory branch or distributor licensed under this act to require, attempt to require, coerce or attempt to coerce any new vehicle dealer in this Commonwealth to:

(1) Order or accept delivery of any new vehicle, part or accessory thereof, equipment or any other commodity not required by law which shall not have been voluntarily ordered by the new vehicle dealer, except that this paragraph is not intended to modify or supersede any terms or provisions of the franchise requiring new vehicle dealers to market a representative line of those vehicles which the manufacturer or distributor is publicly advertising.

(2) Order or accept delivery of any new vehicle with special features, accessories or equipment not included in the list price of such vehicles as publicly advertised by the manufacturer or distributor.

(3) Participate monetarily in an advertising campaign or contest or to purchase unnecessary or unreasonable quantities of any promotional materials, training materials, showroom or other display decorations or materials at the expense of the new vehicle dealer.

(4) Enter into any agreement with the manufacturer or to do any other act prejudicial to the new vehicle dealer by threatening to terminate or cancel a franchise or any contractual agreement existing between the dealer and the manufacturer, except that this paragraph is not intended to preclude the manufacturer or distributor from insisting on compliance with the reasonable terms or provisions of the franchise or other contractual agreement and notice in good faith to any new vehicle dealer of the new vehicle dealer's violation of such terms or provisions shall not constitute a violation of the act.

17

Pa. Stat. Ann. tit. 63, S 818.9 (renumbered in 1996 as Pa. Stat. Ann. tit. 63, S 818.12).

The BVA, however, does not include a statute of limitations. Further, insofar as we are aware, the Pennsylvania courts have not issued a published opinion deciding which statute of limitations is applicable to a claim brought under the BVA. As a result, we must make a prediction as to which statute of limitations the Pennsylvania Supreme Court would apply in a BVA action, a process that requires us to examine the theories of liability underlying Northview's claims. See Barnes v. The American Tobacco Co., 161 F.3d 127, 151 (3d Cir. 1998).

The district court sua sponte applied a one-year statute of limitations based upon its determination that 42 Pa. Cons. Stat. Ann. S 5523 governed the time for bringing a BVA claim. See app. at 14. The court, however, relied upon a version of section 5523 no longer in effect at the time of its decision or at the time this cause of action accrued as the legislature had amended section 5523 in 1982 to read as follows:

> The following actions and proceedings must be commenced within one year:
>
> (1) An action for libel, slander, or invasion of privacy.
>
> (2) An action upon a bond given as a security by a party in any matter, except a bond given by a condemnor in an eminent domain proceeding.
>
> (3) An action upon any payment or performance bond.

42 Pa. Cons. Stat. Ann. S 5523. The parties are in accord that none of the actions or proceedings listed in section 5523, as amended in 1982, are applicable to a cause of action brought under the BVA and we are in agreement with them. Thus, the district court erred when it applied a one-year statute of limitations to the BVA claims in this matter and Chrysler acknowledges this point.

Northview argues that the district court should have applied Pennsylvania's "catch-all" six-year statute of limitations to its BVA claims in which event the claims would have been timely. See Appellant Br. at 10 (citing 42

18

Pa. Cons. Stat. Ann. S 5527). Section 5527 provides that "[a]ny civil action or proceeding which is neither subject to another limitation specified in this chapter nor excluded from the application of a period of limitation by section 5531 . . . must be commenced within in six years." Because we find the BVA claims are the subject of another period of limitation specified in the relevant statutory chapter, the six-year statute of limitations is not applicable here.

Chrysler suggested in the district court when moving for summary judgment against Cuda that a two-year statute of limitations applies to the BVA claims. It takes the same position with respect to Northview's BVA claims. In support of its argument for the application of a two-year statute of limitations, Chrysler cites to 42 Pa. Cons. Stat. Ann. S 5524(5) which states that an "action upon a statute for a civil penalty or forfeiture" must be commenced within two years. See Appellee Br. at 62. Chrysler also relies on Nelson v. State Farm Mutual Automobile Ins. Co., 988 F. Supp. 527, 531, 534 & n.11 (E.D. Pa. 1997), see Appellee Br. at 62, as further support for its contention that a two-year statute of limitations governs BVA claims. Nelson applied section 5524(7) in finding a two-year statute of limitations applicable to an action brought under the Pennsylvania statute for a bad faith claim against an insurer. See Nelson, 988 F. Supp. at 531, 534 & n.11. Thus, Northview is in effect contending that both subsections (5) and (7) are applicable.5

But Northview persuasively argues that section 5524(5) is not applicable to the BVA because the statute is not penal and instead is remedial. See Appellant Br. at 11-15. While there are not any reported cases addressing the question of whether the BVA is remedial or penal in nature, its language expresses its remedial nature. See Pa. Stat. Ann. tit. 63, S 818.20 (renumbered in 1996 as Pa. Stat. Ann. tit. 63, S 818.29) (providing for the recovery of damages or

_____

5. In the district court when moving for summary judgment against Cuda, Chrysler advanced an argument that section 5524(5) was applicable and did not rely on section 5524(7). We will not hold, however, that it waived a subsection (7) argument because it did not move for summary judgment against Northview on any limitations basis.

19

equitable relief by those injured by the actions of a manufacturer). Moreover, in 1996 the legislature deleted a provision in section 818.20 that had provided for punitive damages in the event of multiple violations on the BVA, and renumbered the section as 818.29. The legislature thus emphasized the Act's remedial rather than penal nature. Further, similar provisions of the ADDCA have been found to be remedial, see Woodward v. General Motors Corp., 298 F.2d 121, 127-28 (5th Cir. 1962), as have been like state statutes. See, e.g., American Suzuki Motor Corp. v. Bill Kummer, Inc., 65 F.3d 1381, 1388-89 (7th Cir. 1995) (Wisconsin Motor Vehicle Dealer Law is remedial because enacted to protect dealers from unfair and coercive manufacturers); Mike Smith Pontiac, GMC, Inc. v. Mercedes-Benz of North America, Inc., 32 F.3d 528. 531-33 (11th Cir. 1994) (Florida Dealer Protection Act is remedial); Earl Evans Chevrolet, Inc. v. General Motors Corp., 598 N.E.2d 1187, 1193 (Ohio Ct. App. 1991) (Ohio Dealer Act is remedial). Consequently, we conclude that the BVA is remedial rather than penal in nature and, accordingly, section 5524(5) is not applicable to this action.

We are satisfied, however, that section 5524(7) is applicable here. Subsection 7 provides that any action or proceeding "to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct" must be commenced within two years. The BVA provides a cause of action to a franchisee that is injured in his or her business or property by a violation of the Act and Northview brought this action making such claims. See Pa. Stat. Ann. tit. 63, S 8180.20.

The two-year statute of limitations set forth in section 5524(7) has been found to be applicable to other causes of action seeking a statutory remedy for injuries. As we mentioned, Nelson relied upon section 5524(7) in applying a two-year statute of limitations to an action brought under the Pennsylvania statute for a bad faith claim against an insurer. See Nelson, 988 F. Supp. at 534. Further, the two-year statute of limitations period has been held applicable to the Washington Franchise Investment Protection Act. See AAMCO Transmissions, Inc. v. Harris, 759 F. Supp. 1141, 1146 (E.D. Pa. 1991) (finding claims for fraud and failure to

20

deal in good faith most analogous to those claims set forth in section 5524(7)). Also, claims of discrimination under the Pennsylvania Human Relations Act are subject to a two-year statute of limitations under section 5524(7). See Raleigh v. Westinghouse Elec. Corp., 550 A.2d 1013, 1014 (Pa. Super. Ct. 1988); see also Sameric Corp. of Del., Inc. v. City of Philadelphia, 142 F.2d 582, 599 (3d Cir. 1998) (applying section 5524 to an action under 42 U.S.C. S 1983). Here Northview argues Chrysler violated the BVA because of its coercive tactics used to force Northview out of business and the discriminatory manner in which it treated Northview. Thus, it alleged intentional or tortious conduct and, accordingly, we predict that the Supreme Court of Pennsylvania would apply the two-year statute of limitations found in section 5524(7) to the BVA, at least in the circumstances Northview asserts here.

Counsel for Northview agreed at oral argument that the BVA cause of action accrued, at the latest, when Chrysler sent the original notice of termination of the SSAs in July 1991, which was more than two years before it filed this suit in October 1993. As a result, Northview did not timely file its BVA claims. Accordingly, the district court's dismissal of the claims was proper, though for the alternate reasons we have set forth rather than for those upon which the district court relied.

D. Northview's Breach of Good Faith Claim

The district court granted summary judgment in favor of Chrysler on count four of the complaint after finding that the UCC, as adopted by Pennsylvania, did not create an independent cause of action for breach of an implied covenant of good faith, even though the UCC in 13 Pa. Cons. Stat. Ann. S 1203 provides that "[e]very contract or duty within this title imposes an obligation of good faith in its performance or enforcement."6 The UCC, however, is not

_____

6. At oral argument, counsel for Northview seemed to be arguing that the claim for breach of the duty of good faith, rather than being an independent cause of action, colored Northview's breach of contract claims. This suggestion runs contrary to the complaint and the arguments presented in the briefs. In count four of the complaint,

21

the sole source of the obligation to perform in good faith because the Pennsylvania courts have cited Restatement (Second) of Contracts S 205 for the proposition that every contract has an implied term that the parties will perform their duties in good faith, and in its brief Northview did not confine its claim that Chrysler did not act in good faith to the UCC. See, e.g., Somers v. Somers, 613 A.2d 1211, 1213 (Pa. Super. Ct. 1992). In practice, however, the courts have recognized an independent cause of action for breach of a duty of good faith and fair dealing only in very limited circumstances. See, e.g., Creeger Brick and Building Supply, Inc. v. Mid-State Bank and Trust Co., 560 A.2d 151, 153, 154 (Pa. Super. Ct. 1989) (duty is limited to insurers' dealings with insureds, franchisors' dealings with franchisees and other narrow situations); see also Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 701 (3d Cir. 1993) ("[U]nder Pennsylvania law, every contract does not imply a duty of good faith.").

Courts have utilized the good faith duty as an interpretive tool to determine the parties' justifiable expectations in the context of a breach of contract action, but that duty is not divorced from the specific clauses of the contract and cannot be used to override an express contractual term. See Duquesne Light Co. v. Westinghouse Elec. Corp. , 66 F.3d 604, 617-18 (3d Cir. 1995); USX Corp. v. Prime Leasing, Inc., 988 F.2d 433, 438 (3d Cir. 1993). Thus, a party is not entitled to maintain an implied duty of good faith claim where the allegations of bad faith are"identical to" a claim for "relief under an established cause of action." Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d at 701-

_____

Northview pleaded a separate and independent cause of action under the UCC. In addition, Northview argued that it "has a cause of action based upon damages incurred from Chrysler's breach of this implied good faith duty." See Appellant Br. at 16. We find Northview would not be entitled to recovery for breach of the duty of good faith unless an independent cause of action could be pleaded. Accordingly, we review the law of Pennsylvania to determine if such a cause of action exists and to predict whether the Supreme Court of Pennsylvania would allow for such a cause of action. Our disposition rejects the existence of this cause of action on the facts here both at common law and under the UCC.

02 (noting that Parkway's allegations concerning the closing of a garage in bad faith were identical to its allegations under 42 U.S.C. S 1983 and, therefore, there was no reason to imply a separate cause of action for breach of a duty of good faith); see also D'Ambrosio v. Pennsylvania Nat'l Mut. Cas. Ins. Co., 431 A.2d 966, 970 (Pa. 1981) (court refused to recognize separate cause of action for breach of duty of good faith where adequate remedy was provided under Unfair Insurance Practices Act.); Creeger Brick v. Mid-State Bank, 560 A.2d at 154-55; AM/PM Franchise Ass'n v. Atlantic Richfield Co., 542 A.2d 90, 93-94 (Pa. Super. Ct. 1988), aff 'd in part & rev'd on other grounds 584 A.2d 915 (Pa. 1990); Standard Pipeline Coating Co. v. Solomon & Teslovich, Inc., 496 A.2d 840, 843 (Pa. Super. Ct. 1985) (court would not create a tort remedy where there was an adequate remedy to address the claims in existing torts and contracts law).

In view of these precedents, we believe that if a plaintiff alleging a violation of the implied covenant of good faith also were to file a claim for fraud based on the same set of facts, Pennsylvania courts likely would decline to proceed with the claim alleging bad faith. Instead, Pennsylvania courts would consider the other claims in the plaintiff 's complaint. Such an approach limits the use of the bad faith cause of action to those instances where it is essential. The covenant of good faith necessarily is vague and amorphous. Without such judicial limitations in its application, every plaintiff would have an incentive to include bad faith allegations in every contract action. If construed too broadly, the doctrine could become an all-embracing statement of the parties' obligations under contract law, imposing unintended obligations upon parties and destroying the mutual benefits created by legally binding agreements. Therefore, we predict that the Pennsylvania Supreme Court would not extend the limited duty to perform a contract in good faith to a situation such as that presented here in which the parties in great detail set forth their mutual obligations and rights in the SSAs. We are further encouraged to reach this result because Congress in the ADDCA, and the legislature in the BVA, specifically regulated the relationship between automobile dealers and manufacturers. Overall, we are satisfied that, in the face of

23

these detailed provisions setting forth both contractually and statutorily the parties' obligations and rights, we should not recognize an independent cause of action for breach of the implied covenant of good faith in this case.7 Accordingly, the district court appropriately granted summary judgment on this claim.

E. Northview's ADDCA Claim

The ADDCA is a remedial statute enacted to redress the economic imbalance and unequal bargaining power between large automobile manufacturers and local dealerships, protecting dealers from unfair termination and other retaliatory and coercive practices. See, e.g., Maschio v. Prestige Motors, 37 F.3d 908, 910 (3d Cir. 1994); Hanley v. Chrysler Motors Corp., 433 F.2d 708, 710-11 (10th Cir. 1970). It is, essentially, a supplement to the national antitrust laws, passed to counter-balance the economic leverage a manufacturer has over its ostensibly independent dealers, and its "control over [its] product in what amounts to quasi-integration to the retail level of distribution." H.R.Rep. No. 2850, 84th Cong., 2d Sess. 1, 3, reprinted in 1956 U.S.C.C.A.N. 4596, 4596, 4598. There are four elements of an ADDCA cause of action: (1) the plaintiff must be an automobile dealer; (2) the defendant must be an "automobile manufacturer" engaged in commerce; (3) there must be a manufacturer-dealer relationship embodied in a written franchise agreement; and (4) the plaintiff must have been injured by the defendant's failure to act in good faith. See 15 U.S.C. S 1222; Maschio, 37 F.3d at 910; Sherman v. British Leyland Motors, Ltd., 601 F.2d 429, 441 (9th Cir. 1979).8

_____

7. In this regard, we note that we have stated that a federal court in a diversity case should be reluctant to expand state common law. See Leo v. Kerr-McGee Chem. Corp., 37 F.3d 96, 101 (3d Cir. 1994). That principle also should apply when, as here, a court is exercising supplemental jurisdiction over state law claims. After all, regardless of the source of its jurisdiction, the principle is valid because a federal court is applying state law.

8. Clearly, the first three of the required elements of an ADDCA claim have been met in this case. The only question at trial was whether Northview presented facts which would have allowed a reasonable jury to have concluded that Chrysler failed to act in good faith, as that term is defined by the ADDCA.

24

It is axiomatic that any inquiry as to the meaning of a statute must begin with its language. The Act defines the term "good faith" as "the duty of each party to any franchise . . . to act in a fair and equitable manner toward each other so as to guarantee the one party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party. . . ." 15 U.S.C. S 1221(e). The Act, however, does not protect dealers against all unfair practices, but only against those breaches of good faith "evidenced by acts of coercion or intimidation." Salco Corp. v. General Motors Corp., 517 F.2d 567, 573 (10th Cir. 1975). The case law plainly requires actual, or threatened, coercion or intimidation as an element of an ADDCA claim. See General GMC, Inc. v. Volvo White Truck Corp., 918 F.2d 306, 308 (1st Cir. 1990); Arnold Pontiac-GMC, Inc. v. General Motors Corp., 786 F.2d 564, 575 (3d Cir. 1986); Bob Maxfield, Inc. v. American Motors Corp., 637 F.2d 1033, 1038 (5th Cir. 1981). Consequently, it is well established that the duty of "good faith" dealing imposed by the Act must be given a narrow, rather than expansive, construction. See Autohaus Brugger, Inc. v. Saab Motors, Inc., 567 F.2d 901, 911 (9th Cir. 1978); Milos v. Ford Motor Co., 317 F.2d 712, 715-16 (3d Cir. 1963). For example, when assessing the elements of a claim under section 1221(e), the Court of Appeals for the Ninth Circuit noted that:

> There is no question that the failure to exercise good faith within the meaning of the Act has a limited and restricted meaning. It is not to be construed liberally. . . . It does not mean `good faith' in a hazy or general way, nor does it mean unfairness. The existence or nonexistence of `good faith' must be determined in the context of actual or threatened coercion or intimidation.

Autohaus Brugger, 567 F.2d at 911 (citations omitted).

The case law interpreting the ADDCA provides some guidelines for determining whether a manufacturer has been guilty of coercion or intimidation. Thus, a manufacturer's coercion of a dealer into relinquishing the right to sell competing car lines may be actionable, at least if the dealer's franchise agreement gives it the right to make

25

such sales. See, e.g., Cabriolet Porsche Audi, Inc. v. American Honda Motor Co., 773 F.2d 1193, 1210 (11th Cir. 1985) ("We have little doubt that had Honda threatened to deny Cabriolet . . . cars to which it was entitled, unless Cabriolet provided an exclusive facility, this would be evidence of coercion"); Rea v. Ford Motor Co. , 497 F.2d 577, 582-87 (3d Cir. 1974). Similarly, a manufacturer's efforts to drive a dealer out of business can qualify as bad faith. See Junikki Imports, Inc. v. Toyota Motor Co., 335 F. Supp. 593, 595 (N.D. Ill. 1971); see also Randy's Studebaker Sales, Inc. v. Nissan Motor Corp., 533 F.2d 510, 516 (10th Cir. 1976). Also, an automobile manufacturer's coercive attempt to force unwanted automobiles on a dealer constitutes "bad faith." See David R. McGeorge Car Co. v. Leyland Motor Sales, Inc., 504 F.2d 52, 55-56 (4th Cir. 1974).

On the other hand, if an ADDCA defendant has objectively valid reasons for terminating its relations with a dealer, the dealer cannot prevail in an ADDCA action absent evidence that the defendant had an ulterior motive for its action. See Carroll Kenworth Truck Sales, Inc. v. Kenworth Truck Co., 781 F.2d 1520, 1527 & n.4 (11th Cir. 1986); see also York Chrysler-Plymouth, Inc. v. Chrysler Credit Corp., 447 F.2d 786, 791-92 (5th Cir. 1971) ("[T]hat Chrysler Motors may have had grounds for lawful termination of the automobile dealership does not permit this court to set aside a jury verdict. . . . The [ADDCA] is not as concerned with what the parties did as it is concerned with why they did it.").

Our review of the district court's decision on Chrysler's Rule 50 motion of necessity is affected by the court's earlier ruling concerning the statute of limitations and its repeated decisions to admit certain evidence only as proof of motive or intent. As noted, the district court concluded that the statute of limitations barred allegations premised upon Chrysler forcing Northview to take delivery of cars that it did not need and forcing it to join an advertising campaign. The court also prevented Northview from proffering evidence of Chrysler's failure to provide vehicles and parts, the performance of the warranty audit and the failure to provide proper training as direct evidence for a basis for Northview recovering damages. See id. at 24-26. As a

26

result, the court admitted evidence of such "coercive" activity only to demonstrate motive or intent -- i.e., that Chrysler's July 1991 termination of the SSAs was motivated by its desire to force Northview out of business in furtherance of Chrysler's business plan to eliminate stand alone dealers.

The more direct evidence that Northview offered at trial supporting this theory concerned the fact that the SSAs were terminated in July 1991 and that certain other stand alone Jeep and Eagle Dealerships were closed and then re-opened after having been combined with other Chrysler dealerships. From this evidence, Northview argues that a reasonable jury could have concluded that Chrysler coerced or intimidated it into closing its dealership so that Chrysler could pair the dealership with another of its vehicle brands.

At argument before us, counsel for Northview confirmed that he did not challenge the ADDCA statute of limitations and evidentiary rulings of the district court.9 Rather,

_____

9. In its opening brief, Northview does not make any mention of the February 9, 1996 order in its challenges to the district court's decision on the Rule 50 motion. In fact, Northview makes only an oblique one-sentence reference to the statute of limitations issue. See Appellant Br. at 29. Nowhere does Northview expressly challenge the statute of limitations ruling or the ruling of the district court to admit certain evidence only as proof of motive or intent. The entire focus of Northview's
argument is on the fact that, in light of the evidence of motive and the other evidence at trial, its case on wrongful termination was sufficient to
allow a jury to find in its favor on the ADDCA claim.

Interestingly, even though Chrysler prevailed, it challenges the admission of the motive or intent evidence. While Chrysler's argument along these lines is substantial, see Becker v. ARCO Chemical Co., 201 F.3d 176 (3d Cir. 2000), we will assume without deciding that the district court properly admitted the evidence as bearing on Chrysler's motive or intent. Thus, in considering Northview's appeal from the order granting Chrysler judgment as a matter of law, we are considering the Rule 404(b) evidence. Accordingly, we are not following our long-standing practice, see Lightning Lube v. Witco, 4 F.3d at 1198-1200, approved by the Supreme Court in Weisgram v. Marley Co., 120 S.Ct. 1011, 1019-22 (2000), of considering an appeal from an order granting a judgment as a matter of law only on the basis of evidence we determine was admitted properly.

27

Northview argues that when the evidence it presented is considered as proof of Chrysler's bad motive or intent, a reasonable jury could have concluded that Chrysler did not act in good faith when it terminated Northview. 10

While evidence of improper motive may be sufficient in certain franchise terminations cases to create a jury question, see Carroll Kenworth Truck Sales, 781 F.2d at 1527 & n.4; York Chrysler-Plymouth, 447 F.2d at 791-92, the evidence presented here was wholly insufficient to raise an inference that Chrysler was motivated by a desire to close Northview as part of a plan to phase out stand alone Jeep and Eagle dealerships. The theory of Northview's case appears to rest upon the existence of what has been termed Plan 2000. Northview was not allowed to reference Plan 2000 by name at the trial because it did not come into existence until after Northview's SSAs were terminated. See app. at 68, 164-65. Northview argues, however, that the plan was in place before its formal adoption and operated to eliminate stand alone Jeep and Eagle dealerships like Northview and replace them with dealerships selling both Jeeps and Eagles and other Chrysler lines such as Dodge or Plymouth.

In support of its Plan 2000 theory, Northview presented evidence of a number of stand alone Jeep and Eagle dealerships that were closed only to have been reopened later at nearby dealerships of other Chrysler lines. See, e.g., app. at 550-54 (listing 6 Jeep and Eagle dealerships, of over 50 in its region, that were closed and combined with another Chrysler brand). There is noticeably absent from the evidence Northview presented, however, any evidence that Chrysler forced these Jeep and Eagle dealerships to close, that the closed dealerships suffered difficulties similar to Northview, or that the closing and later reopening of the dealerships was not a beneficial change for the

_____

10. Northview has waived any argument that the district court erred in dismissing its breach of contract cause of action as all of its arguments in its brief with respect to the judgment as a matter of law are addressed to the ADDCA. See Society Hill Tower Owners' Ass'n v. Rendell, 210 F.3d 168, 185 (3d Cir. 2000). In any event, the district court correctly granted
the Rule 50(a) motion on all issues being tried.

parties involved. Northview asserts that a reasonable inference to be drawn from evidence of the mere closing of certain Jeep and Eagle dealerships is that Chrysler was motivated to bring about the wrongful termination of all stand alone Jeep and Eagle dealerships such as Northview. Based upon the evidence presented, however, this is not a reasonable inference from the evidence but instead is a leap of faith. As mentioned, there was no evidence presented to suggest any connection between the closings or to suggest that the closings resulted from coercion on the part of Chrysler.

As argued by Chrysler:

> If this marketing plan had been in effect since 1987, one would expect that Northview would have been able to supply evidence of one dealer that was terminated or consolidated pursuant to the plan. If Chrysler had a four-year old plan to get rid of stand alone Jeep/Eagle dealers, where was the evidence of a single dealer that fell prey to the plan? There was none.

Appellee Br. at 36. Chrysler is correct on this point; Northview did not present evidence of any dealership "falling prey" to the alleged marketing plan. In the absence of such evidence, or at least some evidence that the dealership closings that were proffered were not desired by the owners and were connected in some manner, Northview is not entitled to the inference it desires, namely that since 1987 Chrysler was operating under a plan to close all stand alone Jeep and Eagle dealerships. No reasonable jury could draw this inference from the facts presented at trial.

As mentioned, the ADDCA does not protect dealers against all unfair practices, but only against those "evidenced by acts of coercion or intimidation." Salco Corp. v. General Motors Corp., 517 F.2d at 573. The case law plainly requires a plaintiff to present evidence of actual, or threatened, coercion or intimidation. See Bob Maxfield, Inc., 637 F.2d at 1038. While we recognize that a manufacturer could coerce a dealer by placing it in a difficultfinancial position, Northview has not presented evidence of coercion or intimidation in this case. Although there may be evidence that Chrysler and Northview had difficulty

29

understanding and dealing with each other, such difficulty is not actionable under the ADDCA. See, e.g., Gage v. General Motors Corp., 796 F.2d 345, 350-51 (10th Cir. 1986) (arbitrary decision making on part of manufacturer does not constitute violation of ADDCA). A difficult business relationship is not, in and of itself, coercion or intimidation. In the absence of evidence from which a reasonable jury could have inferred that Chrysler coerced or intimidated Northview, or threatened coercive action against it, the district court correctly granted Chrysler's Rule 50 Motion.11

In addition, the other evidence of wrongful intent proffered by Northview was insufficient to create a question for the jury. For example, Northview presented evidence that Chrysler did not provide the dealership with sufficient numbers of the more desirable and faster selling models of the Jeep Cherokee. The evidence offered, however, demonstrated that dealers across the country were experiencing similar problems. See exhs. at 1-2, 3, 4. Northview did not offer evidence that it suffered shortages different than those of any other dealer. Thus, in the absence of evidence of discriminatory treatment, no jury reasonably could have concluded that Chrysler was motivated by its desire to close the Northview dealership in its allocation decisions and thus was coercing Northview by injuring it financially.

Further, despite arguing that it was forced to order unwanted vehicles, Northview did not present any evidence of specific unwanted vehicles that Chrysler forced it to order. Rather, Northview presented evidence that Chrysler recommended that Northview order the mix of vehicles that Chrysler was producing in order to receive its full allocation of vehicles. See app. at 292. From this evidence, Northview

_____

11. Chrysler argues that Northview's failure to take care of its customers,
or otherwise properly run its business, caused its closing. While this may be so, and indeed we are tempted to acknowledge as much, particularly in view of Northview's consumer fraud problems, we refrain from doing so as there is a dispute of fact on this point, and we are obliged in considering the Rule 50(a) order to view the evidence in a light
most favorable to Northview. Our point is that regardless of what Northview did or did not do, Chrysler was entitled to a judgment as a matter of law with respect to its conduct.

argues that Chrysler was attempting to coerce the dealership into ordering unwanted vehicles. The only fair reading of the evidence, however, is that Chrysler was suggesting that Northview order the mix of vehicles so that it could be guaranteed to receive more vehicles. There was nothing preventing Northview from ordering a greater number of more desirable vehicles than it was allocated, but it would have had to wait for other dealers' allocations to be met first and then have its excess orders satisfied by any surplus. See app. at 809-10. No reasonable jury could have concluded that such actions were coercive within the meaning of the ADDCA. See, e.g., Colonial Dodge, Inc. v. Chrysler Corp., 11 F. Supp.2d 737, 744 (D. Md. 1996) (granting summary judgment in favor of manufacturer upon finding that under ADDCA dealer is entitled only to cars due under allocation system, not to all the automobiles it requests).

Also, the evidence presented at trial merely demonstrated that Chrysler, on occasion, either urged or recommended that Northview order, stock, and sell all models of all vehicle lines. The SSAs, however, obligated Northview to market and sell all Jeep and Eagle models energetically and aggressively. See exhs. at 152. In addition, neither the recommendations of a manufacturer nor the actual solicitation of vehicle orders rises to the level of a violation of the ADDCA and they hardly can be viewed as coercive tactics. See Autohaus Brugger, Inc., 567 F.2d at 913. At trial, Northview did not present evidence to suggest that Chrysler did anything more than make suggestions or recommendations. While it may be true that Chrysler stated the only way Northview could be guaranteed more vehicles would be to order in the suggested manner, the evidence could not support a conclusion that Chrysler used coercion or intimidation to force Northview to order unwanted vehicles. Northview was free to order the vehicles it desired, in the numbers it desired, if it were willing to take the chance that there would be a sufficient supply after all dealer allocations were met to meet its demand.

We recognize that Northview presented evidence that Chrysler failed to explain properly its warranty reimbursement system and the EPUR. See app. at 313-14,

332. Again, this problem was one that dealers suffered universally. See id. at 315. The evidence presented could not provide a foundation for a conclusion that Chrysler subjected Northview to discriminatory treatment, i.e., that Chrysler singled it out for warranty audits or that stand alone dealerships in particular were subjected to the audits. Moreover, Northview's evidence did not permit a finding that: (1) the warranty audit was not warranted; (2) its placement on a more restrictive warranty approval system was not appropriate under the circumstances; or (3) the audit or Northview's placement on the more restrictive approval system interfered in any way with its ability to operate the dealership profitably. In the absence of sufficient evidence to support these conclusions, it would be unreasonable for a jury to infer that Chrysler used the warranty audit as a means of coercing Northview to relinquish its franchise.

Northview suggests that, when viewing the evidence, a reasonable jury could have concluded that Chrysler, by its actions and omissions, made it impossible for Northview to operate profitably. Acceptance of this argument, however, would require viewing evidence concerning vehicle ordering and supply, warranty audits, and animosity as substantive evidence to support a damages recovery. As mentioned, Northview was prevented from proffering such evidence for that purpose and has not raised any argument here to suggest that the court's limitation was erroneous. Accordingly, Northview is not entitled to the inference it desires. Moreover, the evidence could not support an inference of coercion or intimidation as is required by the ADDCA.

As a final matter, we note that the SSAs were terminated by operation of section 28, which states that the failure of a dealership to operate its business for seven consecutive business days automatically terminates the SSAs without notice. See exhs. at 162. Thus, notwithstanding Chrysler's having mailed Northview a notice of termination in July 1991, in light of our analysis of the evidence we are satisfied that a reasonable jury could not have concluded that the termination of the SSAs pursuant to section 28 supports a cause of action under the ADDCA. See, e.g.,

Dick Winning Chrysler-Plymouth, Inc. v. Chrysler Motors Corp., 750 F.2d 895, 899-900 (11th Cir. 1985) (no violation of ADDCA where franchise termination was in accordance with express terms of agreement); Globe Motors, Inc. v. Studebaker-Packard Corp., 328 F.2d 645, 648-49 (3d Cir. 1964). Overall, we are satisfied that the district court properly granted Chrysler's motion for judgment as a matter of law, even when we exercise the generous standard of review owed to Northview on its appeal from the judgment entered pursuant to Rule 50(a).

IV. CONCLUSION

For the reasons set forth above, we affirm the March 7, 1995 and February 9, 1996 orders of the district court granting summary judgment in favor of Chrysler as to Northview's BVA and UCC good faith claims. We also affirm the September 28, 1999 order granting Chrysler's motion for judgment as a matter of law pursuant to Rule 50(a).

A True Copy:
Teste:

    Clerk of the United States Court of Appeals
    for the Third Circuit