

2005 Decisions

**Opinions of the United States Court of Appeals for the Third Circuit**

8-3-2005

# Strohm v. MFS Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1422

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Strohm v. MFS Inc" (2005). *2005 Decisions.* Paper 745.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/745

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 04-1422

BARRY STROHM,

Appellant

v.

MFS, INC.

Case No: 04-1570

BARRY STROHM

v.

MFS, INC.,

Appellant
_____

On appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No.: 01-cv-05478
District Judge: The Honorable Robert F. Kelly

_____

Submitted pursuant to LAR 34.1(a)
June 28, 2005

Before: NYGAARD*, SMITH, and FISHER, *Circuit Judges*

(Filed: August 3, 2005)

_____
**\*Honorable Richard L. Nygaard assumed senior status on July 9, 2005.**

_____

OPINION OF THE COURT
_____

SMITH, *Circuit Judge*.

We are presented with cross-appeals from Barry Strohm and MFS, Inc., in which each party challenges certain aspects of the jury verdict returned following trial in Strohm's lawsuit against MFS for breach of contract. The trial followed the District Court's denials of the parties' cross-motions for summary judgment. MFS filed a motion for judgment as a matter of law at the close of the evidence. That motion was denied. The jury entered a verdict in favor of Strohm and against MFS in the amount of $360,044. After the verdict, Strohm filed a motion for judgment notwithstanding the verdict, in which he argued in favor of a larger damage amount, and asked that judgment be entered in his favor in the amount of $743,082.59. The District Court denied this motion as well. The parties have filed cross-appeals challenging the District Court's denial of their respective motions. We will affirm the judgment of the District Court.

Because we write only for the parties, we restrict our discussion to the facts and legal principles necessary to resolve this appeal. The dispute in this case concerns a March 19, 1991, Consulting and Deferred Compensation Agreement (the "Agreement") between Strohm and MFS. The Agreement is governed by Maryland law. The jury found in favor of Strohm with respect to his claim that MFS had breached the contract by failing to make certain payments to Strohm as required under Section 2(b) of the Agreement.

2

MFS argues on appeal that it was entitled to judgment as a matter of law based upon Strohm's alleged failure to fulfill a condition precedent established in Section 2(b). Specifically, MFS argues that Strohm breached the contract and failed to act in good faith by filing suit prior to agreeing with MFS on the identity of an appraiser who would determine the value of certain MFS assets. (The parties agree that Section 2(b) called for Strohm to receive a payment equal to 5 percent of the fair market value of these assets).

We review the District Court's denial of MFS's motion for judgment as a matter of law under a plenary standard of review. *See W.V. Realty v. Northern Ins. Co. of N.Y.*, 334 F.3d 306, 311 (3d Cir. 2003). MFS's motion for judgment as a matter of law may be granted only if the record is critically deficient of the minimum quantum of evidence necessary to prove the validity of Strohm's claim under Section 2(b). *See Johnson v. Campbell*, 332 F.3d 199, 204 (3d Cir. 2003). A directed verdict is not permissible unless "the facts and the law will reasonably support only one conclusion." *See Northview Motors, Inc. v. Chrysler Motors Corp.*, 277 F.3d 78, 88 (3d Cir. 2000).

We believe the District Court correctly denied MFS's motion for judgment as a matter of law. MFS argues that selection by Strohm of an appraiser who would assess the value of properties owned by MFS was a condition precedent to MFS's obligation to pay Strohm under Section 2(b). We think this misstates the requirements of Section 2(b), which indicates that Strohm was to receive his payment of 5 percent of the fair market value of MFS's assets at the conclusion of the consulting period identified in the

3

Agreement. Section 2(b) goes on to state that "*[i]n the event that Mr. Strohm and the Corporation [MFS] cannot agree on such fair market value*, it shall be determined by an appraiser mutually acceptable to Mr. Strohm and the Corporation." (Emphasis added). MFS offers no meaningful response to Strohm's argument that it was MFS, rather than Strohm, that acted improperly, in that MFS did not make the 5 percent payment to Strohm on the appointed date, and more importantly, that MFS never provided Strohm with its own estimate of the fair market value of MFS's assets. The record contains correspondence from Strohm in which Strohm asked MFS for its own estimate of fair market value, in hopes that if Strohm and MFS could agree on an acceptable estimate, the parties would not have to proceed to the next step and incur the delay and expense associated with obtaining outside appraisals. The record also contains a letter from an MFS representative, in which MFS declines to provide a fair market value estimate, and instead asserts that "since I do not think that you and I will be able to agree on values of the properties, I think we should move ahead to each identify appraisers and then let them select a third appraiser."

While the parties accuse each other of less than good faith in connection with the ensuing appraiser selection process, the fact remains that selection of appraisers may not even have been necessary if MFS had first agreed to provide a good faith estimate concerning the fair market value of its assets. The absence of such an estimate deprived Strohm of the ability to determine whether there was a genuine disagreement concerning

4

fair market value, and forced Strohm prematurely into the appraiser selection process that was contemplated in Section 2(b) as a contingency measure in the absence of a mutually satisfactory estimate of fair market value. Given this sequence of events, we believe at a minimum there was a triable issue concerning whether and to what extent MFS's actions may have breached the Agreement prior to any alleged breach by Strohm, and thus we find that the District Court correctly denied MFS's motion for judgment as a matter of law, electing instead to leave the issue to the jury.[*]

_____

*MFS also argues that Strohm displayed bad faith by asking for suggestions from MFS concerning potential appraisers, and then later complaining that MFS had violated Section 2(b) by naming multiple appraisers in its responsive letter to Strohm. The record, however, is more ambiguous than MFS portrays. Strohm's April 2, 2001 letter to MFS suggests that MFS identify "a list of appraisers" suitable to MFS, and indicates that Strohm will review the list to see if one of the appraisers would be mutually acceptable. MFS responded with an April 26, 2001 letter designating two separate appraisers, each of whom would act in connection with a designated subset of the disputed MFS properties. This letter requests from Strohm names of an appraiser or appraisers who would then act in concert with the appraisers named by MFS to select a third, independent appraiser who would perform the necessary appraisals. Strohm responded to MFS's letter by (a) indicating continued disappointment in MFS's earlier failure to provide its own estimate of fair market value; and (b) indicating disappointment that MFS had, in Strohm's view, skipped over the chance to identify a single mutually acceptable appraiser, and instead proceeded to the following step in Section 2(b), by calling for Strohm to identify an appraiser who would join MFS's appraisers in selecting a third, independent appraiser to assess the value of MFS's properties. It is in this context that the concluding portion of Strohm's letter asserts that MFS failed to comply with Section 2(b), by naming multiple appraisers instead of one.

We believe that competing inferences can permissibly be drawn from the parties' correspondence concerning the appraiser selection process. Strohm's initial request for a "list" of appraisers can reasonably be interpreted as seeking a list of multiple candidates for a single available slot. This view is consistent with Section 2(b), which appears to contemplate that in the absence of agreement between Strohm and MFS on fair market value, all MFS properties would ultimately be appraised by a single appraiser. MFS's April 26, 2001 letter to Strohm can reasonably be read as contravening this requirement, by proffering two different appraisers, each of whom would be separately tasked with appraising a particular subset of MFS's properties. The sort of "list" provided by MFS, in other words, does not appear to have been the same sort of "list" contemplated by Strohm's letter of April 2, 2001. In these circumstances, we believe the

5

We now turn to Strohm's appeal of the District Court's denial of his motion for judgment notwithstanding the verdict. Strohm's appeal is predicated on the argument that Section 2(b) called for Strohm to receive a severance payment equal to 5 percent of the fair market value of MFS's "assets." Strohm contends that the term "assets" plainly means "gross assets," and that the jury's verdict was impermissibly calculated on a "net asset" basis, in which the fair market value of MFS's assets was offset by MFS's outstanding liabilities. Based on our review of the record and the pertinent Maryland authorities, we believe the District Court properly held that the term "assets" standing alone was ambiguous, thus creating a fact issue concerning whether the parties had intended to calculate Strohm's severance payment using a "gross asset" or a "net asset" methodology. We further hold that MFS introduced ample evidence in support of its position that the parties intended to employ a "net asset" methodology under the Agreement. In light of this analysis, we find that the jury was within its rights to calculate the severance payment owed to Strohm on a "net asset" basis, and thus the District Court properly denied Strohm's motion for judgment notwithstanding the verdict.

For the foregoing reasons, the cross-appeals are denied, and the judgment of the District Court will be affirmed.

---

District Court quite correctly left the jury to make determinations concerning which of the parties had or had not acted in good faith.